(C. D. 1452)

## M. M. DuPouey v. United States

United States Customs Court, Second Division

(Decided July 24, 1952)

*Philip Stein* (*Philip Stein* and *Marjorie M. Shostak* of counsel) for the petitioner. *Charles J. Wagner*, Acting Assistant Attorney General (*John J. Antus*, special attorney), for the respondent.

Before Lawrence, Rao, and Ford, Judges

Lawrence, Judge:  Additional duties imposed on an importation from Guatemala by reason of the final appraised value exceeding the entered value are here sought to be remitted pursuant to the provisions of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489).

The merchandise consisted of 36 cases of leather handbags, 1 case of sheepskins, and 4 cases of cotton cloth sandals. As a result of the advance in value by the appraiser, the original duty of $618.63 was increased in the sum of $521, and additional duties were imposed in the amount of $3,989.61.

The entry discloses the importer of record to be Miss M. M. DuPouey of New Orleans, La. (petitioner herein), and that the importation is for the account of Mid-Continent Export Company of Tulsa, Okla. It appears from the record that M. N. Gomez was the sole owner of that company.

At the outset, we are met with an objection by respondent that a jurisdictional infirmity is present which compels primary consideration. It is pointed out that prior to the time Miss DuPouey (the nominal consignee) filed the instant petition, M. N. Gomez, owner of Mid-Continent Export Company (the ultimate consignee of the merchandise), had previously filed petition 6697–R with respect to the same importation. It may be noted that upon the demise of M. N. Gomez, Margaret M. Gomez, administratrix of the estate of M. N. Gomez, was substituted as petitioner.

Briefly stated, it is the contention of respondent that inasmuch as rule 25 of the rules of this court, pursuant to section 489 of the Tariff Act of 1930, provides that "Petitions for remission of additional duties * * * shall be in writing, signed and filed, in duplicate, by the importer, consignee, or agent * * *," that only one of the parties named in the rule, either the importer, the consignee, or the agent, may file petition but that not more than one of the named parties may file.

We find it unnecessary to decide that question in this case for the reason that the Gomez petition (6697–R) has been abandoned and was dismissed by this court. (*Margaret M. Gomez, Administratrix of the Estate of M. N. Gomez* v. *United States*, 28 Cust. Ct. 471, Abstract 56642.) Hence, the jurisdictional question raised by respondent has become moot, and it would serve no purpose for us to decide whether the Gomez petition was abandoned because it was deemed to have been improvidently filed or what other reason may have induced its abandonment.

We shall proceed, therefore, to the merits of the petition.

From the testimonial record and the various exhibits in evidence, the following state of facts appears.

Miss DuPouey, a licensed customhouse broker and freight forwarder, actively engaged in that business for over 20 years, received a communication from Manuel Antonio Pilon of Guatemala (petitioner's collective exhibit 1) informing her that, in accordance with instructions received from Mid-Continent Export Company, the articles in controversy

were being shipped to her and instructing her to take care of the customs clearance and to forward the shipment to the ultimate consignee. The original consular invoice, certificate of shipper, packing list, and commercial invoice were enclosed.

Miss DuPouey notified the ultimate consignee when the merchandise arrived at New Orleans and received authorization from Mr. Gomez, the owner of Mid-Continent Export Company, to make the entry. Petitioner, in the capacity of freight forwarder, had handled Mr. Gomez's export business for some time but this was the first instance she was called upon by this client to take care of an importation. However, following her usual practice of taking all the necessary steps preparatory to making entry of merchandise, Miss DuPouey submitted her complete file to the appraiser's office at New Orleans and had a conference there with Michael T. Blouin, one of the United States examiners, with regard to prices. She was instructed to submit form 101 (a formal submission sheet) and form 20 (which provides the details of the transaction). At this conference, the invoice prices were reviewed and she was directed (as reflected by a pencil memorandum of Blouin in evidence as petitioner's exhibit 2) to "Leave 5% commission in but deduct air freight." Petitioner was informed by Blouin that he had no current information as to market value. She, therefore, prior to making entry, communicated by telephone with Gomez, and Gomez in turn contacted the shipper Pilon, and she was assured that the invoice prices were correct. Entry of the merchandise on the basis of the invoice prices plus 5 per centum buying commission was accordingly made, and duty was paid with funds transmitted to her by the Mid-Continent Export Company.

Miss DuPouey was subsequently requested by the appraiser's office to obtain from the importer all correspondence, including price lists and photographs, if any, covering the shipment and was requested to furnish samples.

Petitioner obtained the desired information which she transmitted to Blouin. The only price list Mid-Continent Export Company could supply at the time was the one represented by respondent's collective exhibit 7 which, according to petitioner, indicated unit prices for retail parcel-post shipments and did not indicate prices in wholesale quantities. The ultimate consignee wrote to the shipper seeking further information as to prices in wholesale quantities as represented by the present importation.

From the testimony of Blouin, it appears that he had been an examiner of merchandise at the port of New Orleans since 1936. He explained that inasmuch as this was the first shipment of this type of merchandise at that port, he communicated with the Customs Information Exchange prior to appraisement of the merchandise. On the

basis of the information he received, the merchandise was appraised at prices which conformed to those appearing in the price list in evidence as respondent's collective exhibit 7. Blouin had been dealing with the petitioner for a number of years and admitted that she always acted in good faith and offered every document she had, and he did not believe that in the entry of the present merchandise she attempted to deceive any of the Government officials or to defraud the revenue of the United States.

Subsequent to appraisement, the shipper forwarded a letter and affidavit in support of the correctness of the invoice prices (petitioner's collective exhibit 3) to the Mid-Continent Export Company which, in turn, transmitted these papers to the petitioner herein. Inasmuch as appraisement had been made and time for appeal for a reappraisement had elapsed, petitioner forwarded these papers to the collector together with her petition for remission of additional duties.

The appraised values of the merchandise not having been contested, and the time for appeal having elapsed, they became final and conclusive upon all parties (19 U. S. C. § 1501). An inquiry arises, in circumstances such as are present here, as to why the entrant of merchandise who conscientiously performs her duty and prepares entry papers with the requirements of the law in mind, and confident that the entered values are correct, would not file an appeal for reappraisement where said values have been advanced on appraisement. Such an appeal is not mandatory, of course, and relief from the additional duties may be sought in any event. The record here, however, clearly indicates that the answer why an appeal was not filed was, as stated by petitioner, "Because we did not have the supporting document to prove our case and it is almost impossible to file an appeal to reappraisement unless you have something definite in your possession to disprove the appraiser, and we were not in possession of those documents until after the time limit had expired for the filing of an appeal to reappraisement."

There is a suggestion in the record before us that Mid-Continent Export Company, the ultimate consignee of the merchandise, was not the true purchaser of the merchandise but that it was a Mr. Galindo, who appears to be a nephew of Pilon, the shipper. If such were a fact known to the petitioner, it would have been her duty to acquaint the appraiser with that relationship and to have made independent inquiries as to whether the invoice values were less than the foreign-market values. *Bolinders Co., Inc.* v. *United States*, 28 C. C. P. A. (Customs) 40, C. A. D. 122.

A careful consideration of the record before us fails to disclose any evidence which would put petitioner herein on notice that the Mid-

Continent Export Company was not, in fact, the true purchaser, and we find no laches whatsoever on her part in this regard.

We have examined the various cases cited by respondent in its brief but find it unnecessary to enter upon an extended discussion of them here. Each remission case rests upon the peculiar facts and circumstances surrounding it (*Glendenning, McLeish & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 387 at 389, T. D. 41320, cited with approval in *Morris Rosenbloom & Co.* v. *United States*, 17 C. C. P. A. (Customs) 45, T. D. 43336), and our conclusion herein is based upon a careful consideration of the evidence concerning the entry of the merchandise in this particular case.

The testimony of the petitioner herein, which is substantiated by the various exhibits in evidence, together with the statement of Examiner Blouin that petitioner has been forthright and honest in this as well as in all previous dealings with the customs authorities, and the impression of sincerity and integrity of both witnesses which was conveyed to the author of this opinion at the hearing of the case, satisfy the court that petitioner herein has demonstrated not merely an absence of bad faith but by proof of her affirmative acts has furnished convincing evidence of her good intent.

Fully cognizant of the burden resting upon a moving party in a remission case, which has been laid down by the statute and supplemented by case law, we are satisfied, and hold, upon the record before us, that entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The petition for remission is, therefore, granted.

Judgment will be entered accordingly.